UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVA SLOMOVICS,<br><br>                Plaintiff,<br><br>  vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC; and HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI,<br><br>                Defendant. | Civil Case No.: 1:24-cv-07736<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Eva Slomovics ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax") and Higher Education Loan Authority of the State of Missouri, ("MOHELA") (together, "Defendants"), and states as follows:

## INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is

disseminated and/or obtained about them. In fact, Defendant Equifax acknowledges this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5. Since the FCRA was enacted in 1970, federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6. One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system. *See* 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes. *See Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970)).

8. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period

beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11. Plaintiff's claims arise out of Defendant Equifax's blatantly inaccurate credit reporting, wherein Equifax reported to Plaintiff's potential creditors that Plaintiff had an outstanding student loan balance after the student loans were forgiven.

12. Accordingly, Plaintiff brings claims against Defendant Equifax for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13. Plaintiff also brings a claim against Defendant MOHELA for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and Defendant Equifax, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as described herein.

## PARTIES

15. Plaintiff is a natural person residing in Brooklyn, New York, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16. Defendant Equifax is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of New York, including within this District. Equifax can be served through their registered agent Corporation Service Company located at 2 Sun Court, Suite 400 Peachtree Corners, Georgia 30092.

17. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18. Defendant MOHELA is a company that services federal student loans with its headquarters in Missouri and is authorized to do business in the State of New York, including within this District.

19. MOHELA is a loan servicer and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

**JURISDICTION AND VENUE**

20. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS**

**Summary of the Fair Credit Reporting Act**

22. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

23. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

24. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

25. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to

ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

26. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## Factual Background

27. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

28. Defendant Equifax sells millions of consumer reports (often called "credit reports" or "reports") per day, and also sells credit scores.

29. Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant Equifax, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30. Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendant Equifax, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

31. Defendant Equifax's consumer reports generally contain the following information:

    (a) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

  (b) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

  (c) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and,

  (d) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

32. Defendant Equifax obtains consumer information from various sources. Some consumer information is sent directly to Defendant Equifax by furnishers.

33. The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like Defendant Equifax) to make lending decisions.

34. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendant Equifax's consumer reports.

35. The information Defendant Equifax includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

36. FICO Scores are calculated using information contained in Defendant Equifax's consumer reports.

37. Defendant Equifax knows that FICO and other third-party algorithms (as well as the algorithms owned by CRAs) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

38. Defendant Equifax knows that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

39. DTI compares the total amount a consumer owes to the total amount a consumer earns.

40. The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

41. Defendant Equifax routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b) of the FCRA.

42. Defendant Equifax fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

43. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendant Equifax for its inaccurate credit reporting.

44. Thus, Defendant Equifax is on continued notice of its inadequate reporting procedures. Specifically, Defendant Equifax is on notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

45. Defendant Equifax has received and documented many disputes from consumers complaining that Equifax reported inaccurate information about them.

### Plaintiff's Student Loan is Forgiven

46. In the early 1990's, Plaintiff obtained two student loans with the Department of Education.

47. Recently, Plaintiff received an email from her student loan servicer, non-party Navient, informing Plaintiff that she may be eligible for student loan forgiveness if she is able to consolidate her loans.

48. Accordingly, Plaintiff applied and was approved to have her student loans consolidated.

49. Additionally, after Plaintiff's student loans were consolidated, the servicing of her loans was transferred from non-party Navient to MOHELA.

50. Sometime prior to May 2023, Plaintiff applied for student loan forgiveness through the Public Service Loan Forgiveness ("PSLF") program.

51. On May 6, 2024, MOHELA sent a letter to Plaintiff confirming that her consolidated student loan had been forgiven in its entirety.

### Defendant Equifax Did Not Update the MOHELA Account Balance

52. Sometime after her student loan was forgiven, Plaintiff obtained and reviewed her Equifax, Experian, and TransUnion credit files.

53. Plaintiff reviewed the pertinent details in her credit report and learned that her student loan was still being reported as having an outstanding balance.

54. Specifically, her student loan reported as MOHELA/Dept of Ed with account number ending 0002 was reported with a balance amount of $528,997.00

55. Plaintiff was confused and distressed by this information because her student loan had been forgiven.

56. Plaintiff no longer owed $528,997.00 and that balance amount should no longer have been reported after the student loan forgiveness.

**Plaintiff's Dispute Regarding the Inaccurate Credit Reporting (June 2024)**

57. On or about June 26, 2024, Plaintiff submitted written disputes to Equifax, Experian, and TransUnion, explaining that the reported balance was inaccurate because her student loan was forgiven under the PSLF program, and demanding that the reported balance be corrected.

58. With each dispute letter, Plaintiff enclosed a copy of her driver's license and the letter from Defendant MOHELA indicating that her student loans had been forgiven to support her dispute.

59. In response to Plaintiff's dispute, non-parties Trans Union and Experian corrected the disputed reporting.

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

60. By letter dated July 23, 2024, Defendant Equifax acknowledged Plaintiff's dispute but stated that it would not conduct an investigation until Plaintiff submitted additional information to verify her identity. Equifax's June 23 letter further stated that the documents enclosed with Plaintiff's dispute were not legible and that the identifying information provided by Plaintiff did not match the information in Plaintiff's credit file.

61. Plaintiff found this request odd as she had already submitted clear copies of both her driver's license and MOHELA's May 6, 2024, letter stating that Plaintiff's student loan had been forgiven.

62. Plaintiff nevertheless complied with Equifax's instructions and resubmitted the requested information.

63. Upon information and belief, Equifax sent Defendant MOHELA an automated credit dispute verification ("ACDV") upon receiving Plaintiff's June 26, 2024 dispute letter.

64. By letter dated July 29, 2024, Defendant Equifax responded to Plaintiff and provided her with a copy of her updated credit report. However, the disputed information was not corrected, and Defendants continued to report that the plaintiff's MOHELA account has an outstanding balance.

65. Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

66. Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's June 26, 2024 dispute.

67. Thereafter, Defendant Equifax failed to correct or delete the balance amount in relation to the student loan reported 'in Plaintiff's credit file and reports.

68. Equifax failed to conduct a reasonable reinvestigation of Plaintiff's June 26, 2024 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant's Method for Considering Consumer Credit Report Disputes**

69. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

70. The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries'

standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

71. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

72. It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

73. Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

74. Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

75. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

76. These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

77. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

78. The data furnishers, like Defendant MOHELA, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether

the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

79. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

### Defendant MOHELA's Unreasonable Dispute Reinvestigation

80. Upon information and belief, on or about November 28, 2023, Defendant MOHELA received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

81. Upon information and belief, Defendant MOHELA failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered on or about June 26, 2024.

82. Upon information and belief, Defendant MOHELA verified the disputed information as accurate to Defendant Equifax on or about June 26, 2024.

83. Defendant MOHELA violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

84. Plaintiff reasonably believes that Defendant MOHELA continued to furnish data to Defendant Equifax inaccurately suggesting that Plaintiff still had an outstanding balance associated with her already forgiven student loan.

85. Plaintiff reasonably believes that Defendant Equifax continued to publish that Plaintiff still had an outstanding balance associated with her already forgiven student loan.

86. As a result of the inaccurate reporting of the balance amount, and despite Plaintiff's student loan having been forgiven, the Defendants made it practically impossible for Plaintiff to continue to obtain credit.

87. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

88. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

89. As a standard practice, Defendant Equifax does not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See, e.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

90. Defendant Equifax is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant Equifax's violations of the FCRA are willful.

91. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate

credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## CLAIMS FOR RELIEF
### COUNT I
### Violation of 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Against Equifax)

92. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

93. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports. 15 U.S.C. §1681e(b)

94. On numerous occasions, Defendant Equifax prepared patently false consumer reports concerning Plaintiff.

95. Defendant Equifax readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

96. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

97. As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

98. Defendant Equifax's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

99. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## Violation of 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
## (Against Defendant Equifax)

100. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

101. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day time limit for the completion of such an investigation.  *Id*.

102. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

103. Plaintiff disputed the inaccurate information with Equifax and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the balance amount associated with her already forgiven student loan account ending 0002.

104. In response to Plaintiff's dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

105. Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

106. As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

107. Defendant Equifax's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

108. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## Violation 15 U.S.C. § 1681s-2(b)
## Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
## (Against MOHELA)

109. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

110. Defendant MOHELA furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax.

111. Defendant MOHELA violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax.

112. As a result of Defendant MOHELA's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

113. Defendant MOHELA's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

114. Plaintiff is entitled to recover attorneys' fees and costs from Defendant MOHELA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

  i. Determining that Defendants negligently and/or willfully violated the FCRA;

 ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: November 6, 2024

*/s/ Moshe Boroosan*
Moshe Boroosan, Bar No. 5429915
CONSUMER ATTORNEYS
72-47 139th Street
Flushing, NY 11367
T: (718) 887-2926
F: (718) 715-1750
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiff Eva Slomovics*